IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREEN HILLS DEVELOPMENT COMPANY, LLC, et al., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:11-cv-1885-P-BN |
| CREDIT UNION LIQUIDITY SERVICES, LLC, et al., | § § § § | **FILED UNDER SEAL** |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs Green Hills Development, LLC ("Green Hills"), Heartland
Development Company, LLC ("Heartland"), Lennox Development, LLC ("Lennox"),
Provonce Development, LLC ("Provonce"), and Benjamin O. Turnage (collectively,
"Plaintiffs") have filed a Motion for Sanctions. *See* Dkt. No. 252. Plaintiffs seek
litigation-ending sanctions: judgment on their affirmative claims and dismissal with
prejudice of the defendants' counterclaims. *See id.* Chief Judge Jorge A. Solis has
referred the motion to the undersigned, *see* Dkt. No. 256, and the Court now denies the
Motion for Sanctions, *see generally Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL
410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers
a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate
judge, rather than the sanction sought by the party, governs the determination of
whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the
magistrate judge finds that dismissal or another sanction disposing of a claim or

defense in unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge).

## Procedural Background

Plaintiffs filed a Motion for Sanctions for alleged discovery abuse. *See* Dkt. No. 252. Defendant Credit Union Liquidity Services, LLC f/k/a Texans Commercial Capital, LLS ("CULS" or "TCC") filed a response. *See* Dkt. No. 268-2. Defendant National Credit Union Administration Board (as Conservator of Texans Credit Union) ("NCUA" or "TCU") also filed a response. *See* Dkt. No. 266. Plaintiffs filed a reply to Defendants' responses. *See* Dkt. No. 276. The Court then set the Motion for Sanctions for hearing on March 20, 2015. *See* Dkt. No. 280.

Just before the hearing, Plaintiffs filed a motion for leave to file a supplement in support of the Motion for Sanctions, *see* Dkt. No. 287, which Chief Judge Solis referred to the undersigned, *see* Dkt. No. 288. After hearing argument at the March 20, 2015 hearing, the Court granted the motion for leave to file the motion to supplement to Plaintiffs' Motion for Sanction and gave Defendants an opportunity to file responses. *See* Dkt. Nos. 289 & 292. Defendant CULS filed a response on April 2, 2015, *see* Dkt. No. 297, and Plaintiffs filed a reply on April 10, 2015, *see* Dkt. No. 304. The supplement primarily added evidence from depositions that were taken after the Motion for Sanctions was filed.

During the March 20, 2015 hearing, Plaintiffs tendered the Affidavit of James Richey for the purpose of authenticating documents in support of their Motion for Sanctions. *See* Dkt. No. 293 (Affidavit of James Richey); Dkt. No. 294 at 10. Defendants

objected to the affidavit. *See* Dkt. No. 294 at 11. The Court set an additional evidentiary hearing on Plaintiff's Motion for Sanctions for April 13, 2015, which was then rescheduled to April 21, 2015, for the limited purpose of allowing the parties to examine James Richey in connection with his affidavit offered by Plaintiffs at the March 20, 2015 hearing. *See* Dkt. Nos. 290, 303, & 307. The Court also gave Defendants an opportunity to file any written objections to Mr. Richey's affidavit and to Plaintiffs' offering the affidavit in support of their Motions for Sanctions and gave Plaintiff the opportunity to file a response to any objections. *See* Dkt. Nos. 290 & 303. Defendant CULS filed objections on April 15, 2015, *see* Dkt. No. 308, and Plaintiffs filed a response on April 20, 2015, *see* Dkt. No. 311. Mr. Richey then testified at the March 21, 2015 evidentiary hearing. *See* Dkt. No. 312.

## Background

I.  <u>Plaintiffs' Motion for Sanctions</u>

Plaintiffs seek litigation-ending sanctions based on their contentions that documents that they obtained after the Court reopened discovery prove that Defendants have engaged in discovery abuse throughout the course of this litigation and that, as a result, Plaintiffs have been irreparably harmed.

Plaintiffs sued Defendants CULS/TCC and TCU/NCUA in the 191st Judicial District Court of Dallas County, Texas on March 12, 2009. *See* Dkt. No. 3 at 5-36; Dkt. No. 267 at 5-36. Plaintiffs subsequently amended their petition and added claims against David Addison and other individual defendants. Plaintiffs asserted claims for fraud, rescission/reformation, unconscionability, duress, promissory estoppel, equitable

estoppel, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, constructive trust, equitable subordination, permanent injunction, discharge of guarantors, and conspiracy against Defendants based on four loans that TCC made to Plaintiffs Green Hills, Heartland, Lennox, and Provence and on representations and other matters related to the loans. *See* Dkt. No. 267 at 37-76.

On April 15, 2011, NCUA placed TCU into conservatorship and appointed itself conservator of TCU. On August 3, 2011, NCUA intervened in the state court action, *see* Dkt. No. 10-4 at 129-133, and removed the case to federal court, *see* Dkt. No. 2. On December 20, 2012, after the discovery deadline and disposition of all pre-trial motions other than motions in limine, NCUA filed suit against David Addison in the United States District Court for the Northern District of Texas. *See* No. 3:12-cv-5191-G, Dkt. No. 1 (N.D. Tex.) (the "Addison litigation"). Addison is the President and CEO of TCU, Chairman of the Board of TCC, and former acting President and board member of CULS.

Plaintiffs then filed a Combined Motion for Leave to Reopen Discovery as to Defendant NCUA and to Compel Full and Complete Responses to Plaintiffs' Requests for Production [Dkt. No. 169] in this case based on allegations raised in the Addison litigation. On May 14, 2013, Chief Judge Solis granted the motion in part. The Court granted the motion for leave to reopen discovery as to NCUA and granted leave to conduct limited discovery as to Defendant David Addison. The Court denied the motion to compel because the record was incomplete as to all previous requests for production

and related proceedings but provided that the parties could contest discovery issues as they arise. *See* Dkt. No. 186.

After discovery was reopened, Plaintiffs acquired new information from three sources: production from NCUA/TCU in response to Plaintiffs' supplemental discovery requests, disclosure from the NCUA regulators in response to a formal request by Plaintiffs, and information obtained from independent sources. Plaintiffs assert that they requested this same information from Defendants through discovery numerous times over the last five years and that the existence of the information proves that Defendants have engaged in discovery abuse by willfully and intentionally failing to produce responsive documents in their possession and control. Plaintiffs further argue that they have been prejudiced by the discovery abuse because a complete set of documents responsive to Plaintiffs' discovery requests – documents that they claim are critical evidence to support their claims – cannot now and will never be produced.

II.    The Discovery Disputes

This case has a long and tortured procedural history. The Court will focus on the discovery disputes and related procedural matters that are relevant to the motion for sanctions.

    A.    Requests for Disclosure and First Requests for Production of Documents

Plaintiffs served Requests for Disclosure and Requests for Production ("RFPs") of Documents to both TCU and CULS on March 20, 2009. *See* Plaintiffs' Appendix, Dkt. No. 254 at 359- 368 (to TCU), 369-378 (to CULS). Plaintiffs identify four categories of documents sought in these requests that they contend are relevant to the motion for

sanctions. First, "all documents ... reflecting or relating to Your ability to fund Your portfolio of commercial loans," quoting RFP 32. Second, CULS's articles of incorporation/organization as well as all documents relating to the creation of CULS, as shown by RFP No. 49. Third, all documents relating to the inability to fund any approved loan, as shown by RFP No. 52. And, fourth, all documents sent to or received by any regulators as well as all documents evidencing executive bonus structures. Plaintiffs do not identify which RFPs allegedly request the fourth category of documents. In its response, CULS asserts that the RFPs did not request documents responsive to the fourth category. CULS also identifies RFPs that might apply to the categories of documents described by Plaintiffs and supported by global citations to the requests for production in their entirety. In their reply, Plaintiffs complain about CULS's discussion of discovery issues that Plaintiffs characterize as not at issue. The Court therefore will focus on the RFPs specifically identified by Plaintiffs in the Motion for Sanctions.

CULS and TCU filed responses with objections on April 20, 2009, *see* CULS Appendix, Dkt. No. 268-5 at 1-16 (TCU), 268-5 at 17-35 (CULS), and produced documents subject to those objections. Plaintiffs filed motions to overrule the objections and compel discovery. *See* Dkt. No. 254 at 464-72 (as to TCU), 474-83 (as to CULS).

The state district judge heard the motion to compel as to CULS, but not as to TCU, on December 16, 2009. *See id.* at 579-624 (transcript), 587, 591, 606, 614-15 (hearing on CULS motion only). The state court recognized that separate issues existed between requests made to CULS and TCU; however, the state court stated that its

rulings as to TCU "are going to be consistent" with those made as to CULS. *Id.* at 606, 615.

The state court sustained CULS's objections to RFP No. 32, which sought all documents generated since January 2005 reflecting or relating to CULS's ability to fund its portfolio of commercial loans because it was overbroad. *See id.* at 610.

The state court sustained CULS's objections to RFP No. 49, which sought all articles of incorporation/organization, partnership agreements, by-laws, shareholder's agreements, and other documents reflecting or relating to the creation or governance of CULS because it was overbroad. *See id.* at 612.

The state court sustained CULS's objections to RFP No. 52, which sought all documents generated since January 2005 reflecting or relating to any inability to fund any approved loan because it was overbroad. *See id.* at 613.

The state court indicated that the rulings at the December 16, 2009 hearing were not final and that it contemplated entering a final order after issues concerning e-discovery were resolved. *See id.* at 603, 614-16. The state court also ordered the parties to prepare a protocol of search terms for e-discovery. *See id.* at 663.

Plaintiffs filed a Motion to Compel and for Sanctions on March 3, 2010 asking the state court to compel Defendants to produce documents pursuant to the state court's rulings at the December 16, 2009 hearing. *See id.* at 484-90. Defendants subsequently produced additional documents. At an April 9, 2010 hearing on Plaintiffs' Motion for Continuance, *see* No. 254 at 630-73, CULS's counsel represented that it had produced hard copies of all requested and readily available documents pursuant to the

state court's oral rulings, including meeting minutes, cash or liquidity reports, and audited financial statements kept in the regular and ordinary course of business, and that other requested documents did not exist. *See id.* at 633-34, 642-43, 648.

B.      Second Requests for Production of Documents

Plaintiffs served their Second Request for Production of Documents to TCU and CULS on February 24, 2010. *See id.* at 379-388 (to TCU), 391-402 (to CULS). Plaintiffs identify six categories of documents sought in these requests that they contend are relevant to the Motion for Sanctions. First, documents showing liquidity to make advances on loan commitments or lines of credit to TCC, as shown by RFP Nos. 8, 14, and 48 to TCU and RFP Nos. 8, 14, and 49 to CULS. Second, documents relating to business strategy directives from TCU to TCC, as shown by RFP No. 17 to TCU. Third, policies relating to real estate development, as shown by RFP Nos. 28 and 29 to TCU and RFP Nos. 27, 28, and 29 to CULS. Fourth, documents relating to Addison's control of TCC, as shown by RFP No. 41 to TCU and RFP No. 42 to CULS. Fifth, CULS's articles of incorporation, as shown by RFP No. 11 to TCU and RFP No. 11 to CULS. And sixth, all regulator documents evidencing executive bonus structures. Plaintiffs do not identify which RFPs allegedly request the sixth category of documents. Plaintiffs also argue that they requested documents as to whether their loans had been transferred to other entities, as shown by RFP No. 55 to CULS.

CULS and TCU filed responses and objections to the Second Requests for Production on March 29, 2010. *See* Dkt. No. 268-5 at 43-62 (CULS), 268-5 at 63-82 (TCU). Plaintiffs filed a motion to overrule the objections and compel discovery. *See*

Dkt. No. 254 at 496-570.

The state district judge heard the motion to compel and other motions on April 15, 2010. *See id.* at 232-358. The state court's rulings were made subject to future resolution of the pending e-discovery issues. *See id.* at 287.

The state court overruled CULS's objections to RFP No. 7, which sought all documents that relate to or contain communications concerning TCC's performance on its obligations to any of Plaintiffs. *See id.* at 292-93.

The state court overruled CULS's objections to RFP No. 8, which sought all documents that show the monthly lending capacity, that is, the liquidity to make advances on loan commitments or lines of credit to TCC, and defined the relevant time period as from April 2005 through September 2007. *See id.* at 294-301.

The state court sustained in part and overruled in part CULS's objections to RFP No. 9, which sought all documents under which TCC secured financial capital from CULS or any other source to use in the funding of loans from April, 2005 to the current date. The state court overruled RFP No. 9 to the extent of the Green Hills loan. *See id.* at 306.

The state court sustained CULS's objections to RFP No. 11, which sought articles of incorporation and bylaws. *See id.* at 310.

The state court sustained CULS's objections to RFP No. 14, which sought all documents that concern or relate to financial cash capital available to fund loan commitments made from April 2005 through the present, including all documents prepared by TCC or TCU on a daily, weekly, bi-monthly, monthly, quarterly, and

annual basis and documents reviewed by boards, committees and any group concerning the business of TCC, because it was overbroad. *See id.* at 316.

The state court sustained in part and overruled in part CULS's objections to RFP No. 19, which sought all documents prepared by or reviewed by any person at TCU who reviewed or researched any part of all draw requests by any of the Plaintiffs. The state court overruled the objections as to the Green Hills loan. *See id.* at 322.

The state court sustained CULS's objections to RFP No. 27, which sought all documents that concern TCC's company policies concerning extensions of real estate development plans. *See id.* at 328.

The state court overruled CULS's objections to RFP No. 28, which sought all documents that contain or relate to TCC's company policies concerning making loan commitments on real estate development loans, but limited it to the 2005 to 2007 time frame. *See id.* at 328.

The state court sustained CULS's objections to RFP No. 29, which sought all documents that contain or relate to TCC's company policies concerning any aspect of real estate development loans including, but not limited to marketing, initiating business relationships with prospective customers, making commitments to customers, development of the real estate involved in the loan commitment, draw requests, extension of cash in response to draw requests, loan commitment letters and agreements, extensions of the terms of promissory notes and payment plans on real estate development loans and all other aspects of the real estate development loan business, because it was overbroad. *See id.* at 329.

The state court did not rule on RFP No. 30, which sought the compensation and bonus structure of TCC for executives and loan officers from April 2005 to the present, because Defendant's counsel stated that responsive documents had already been produced. *See id.* at 330.

The state court sustained CULS's objections to RFP No. 42, which sought all documents that concern any action of David Addison as it relates to the formation, business practices, business operations, and/or profitability or loss of TCC, based on CULS's attorney representation to the state court that "I don't know who David Addison is. He has nothing to do with the loans at issue in this lawsuit" as well as the state court's ruling that the request was overbroad. *See id.* at 342-43.

The state court overruled CULS's objections to RFP No. 55, which sought all documents that memorialize or document any transfer by you, to any other entity, of the loans you made to any of the Plaintiffs. *See id.* at 351.

The state court did not address TCU's objections, and the parties have not directed this Court to a written order on these oral rulings. In their response, Defendants assert that they produced 9,515 pages of additional documents after the hearing.

C.   <u>Plaintiffs' Third Requests for Production</u>

Plaintiffs served their Third Request for Production of Documents to TCU and CULS on February 24, 2010. *See id.* at 403-407 (to TCU), 408-413 (to TCC/CULS). Plaintiffs identify one category of documents sought in these requests that they contend are relevant to the Motion for Sanctions – board resolutions and minutes

-11-

concerning the operations of TCC – but they do not identify which specific RFPs allegedly requested those documents.

CULS and TCU filed responses and objections to the Third Requests for Production on March 31, 2010. *See* Dkt. No. 268-5 at 83-87 (CULS), 268-5 at 88-92 (TCU). Plaintiffs filed a motion to overrule the objections and compel discovery. *See* Dkt. No. 254 at 496-570. The same motion to compel challenged Defendants' objections to the second and third requests for production. *See id.* The state district judge heard the motion to compel on April 15, 2010 and considered Defendants' objections raised in response to the second request for production, as discussed above, but did not consider Defendants' objections to the third request for production. *See id.* at 232-358.

D.    Fifth Requests for Production of Documents

Plaintiffs served their Fifth Request for Production of Documents to TCU on September 30, 2010. *See id.* at 458-62. Plaintiffs argue that these requests sought "documents showing TCU's involvement in creation of TCC, TCC's corporate purpose, TCC's capitalization, TCC's lending cap calculations, TCC's lending policies, all agreements regarding Addison's compensation, and documents relating TCU's involvement in TCC's business," but they do not identify which specific RFPs allegedly requested those documents.

TCU filed responses and objections on November 1, 2010. *See* Dkt. No. 268-5 at 99-104. Plaintiffs have not directed this Court to a motion to compel or an order granting a motion to compel on Defendants' responses.

-12-

E.     Electronic Discovery

The burden of e-discovery was discussed at both the December 16, 2009 and April 15, 2010 hearings. The state court judge ordered the parties to prepare a protocol for e-discovery, but the parties were unable to reach an agreement.

Plaintiffs served their Request for Electronic and Magnetic Data to TCC on February 26, 2010. *See id.* at 414-19. Plaintiffs argue that these requests sought "documents, including e-mail, prepared by Jay Champion (TCC President) and Todd Frerichs (TCC CFO) concerning TCC's liquidity and any liquidity crisis," but they do not identify which specific RFPs request those documents. CULS filed its response and objections on March 31, 2010. *See* Dkt. No. 268-5 at 93-98.

Plaintiffs served Electronic Discovery Search Terms to CULS on May 6, 2010, *see id.* at 420-25, and Amended Electronic Discovery Search Terms on June 25, 2010, *see id.* at 426-57. Plaintiffs argue that they sought "E-mails from James Richey, Todd Frerichs, Jay Champion, Richard Boyd, Carey Jamison, Mark Morganfield, and David Addison, among others, regarding many search terms encompassing aspects of liquidity," but they do not identify which specific RFPs request those documents. Defendants filed their Motion for Protection from Discovery on June 25, 2010. *See* Dkt. No. 268-8 at 1-41.

On September 1, 2010, the state court appointed a Special Master to oversee electronic discovery, *see* Dkt. No. 254 at 734-36, and the Special Master ordered Plaintiff Green Hills to file a motion to compel regarding electronic discovery by October 8, 2010 and Defendants to file a response by October 13, 2010, *see* Dkt. No.

268-8 at 49.

CULS placed Defendant Green Hills into involuntary bankruptcy in the Southern District of Mississippi on September 17, 2010. *See In re Green Hills Dev. Co., LLC*, No. 10:3274-ee (Bankr. S.D. Miss. Sept. 7, 2010).

Plaintiffs served their Motion to Compel Production of Documents in Accordance with Protocol on October 8, 2010. *See* Dkt. No. 10-1 at 72-123; Dkt. No. 254 at 571 -78.

Defendants removed the state court litigation to this court on the basis of federal bankruptcy jurisdiction on October 22, 2010, and United States District Judge Barbara M.G. Lynn referred the case to the United States Bankruptcy Court for the Northern District of Texas. *See Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:10-cv-2134-M, Dkt. Nos. 1 & 12. Plaintiffs contend that this was their first notice of the bankruptcy proceeding.

The involuntary petition against Green Hills was dismissed on September 17, 2011. *See In re Green Hills Dev. Co., LLC*, 445 B.R. 647, 666-67 (S.D. Miss. 2011). Plaintiffs then sought to remand this case from the Northern District of Texas back to state court. On February 22, 2011, the Bankruptcy Court for the Northern District of Texas granted the motion to remand, and Chief Bankruptcy Judge Barbara J. Houser explained that, "in light of the dismissal of the Involuntary Petition, it appears that CULS and TCU were engaged in forum shopping." *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:10-cv-2134-M, Dkt. No. 13 (N.D. Tex. Apr. 5, 2011); *In re Green Hills Dev. Co., LLC,* Misc. Pro. No. 10-314-BJH, Dkt. No. 16 (Bankr. N.D. Tex. Feb. 22, 2011).

After remand to state court, the Special Master held a hearing on the Motion to Compel on April 11, 2011. *See* Dkt. No. 254 at 888-939. The Special Master sent a proposed order concerning e-discovery to the state district judge on June 17, 2011. *See* Dkt. No. 268-8 at 153-54.

NCUA intervened in the state court proceeding and removed it to this Court on August 3, 2011. Dkt. No. 10-4 at 129-133; Dkt. No. 2.

After removal, the Court referred a motion to compel, filed on August 4, 2011, to United States Magistrate Judge Jeff Kaplan, who granted the motion to compel in part and denied it in part on August 29, 2011. *See* Dkt. Nos. 18 & 25. The Court denied the motion to compel regarding Plaintiffs' protocol and use of Plaintiffs' information technology ("IT") representative. The Court granted the motion for Defendants to conduct a search of CULS' database and established the protocol for the search, which was limited to the dates of August 5, 2005 through March 11, 2009 and for the following terms, including misspellings: liquidity, participation, Green Hills Development, Green Hills, Greenhills, Heartland Development, Heartland, Stonebridge, Benjamin O. Turnage, Ben Turnage, Turnage, liquidity meetings, liquidity crisis, liquidity meeting agenda, monthly liquidity report, daily funding, cash reconciliation, capitalization, and TCU cap. *See id.* The Court adopted the proposed order submitted by the Special Master. *Compare* Dkt. No. 268-8 at 153-54, *with* Dkt. No. 25. The Court did not expressly order the production of documents. *See* Dkt. No. 25.

F.    The Addison Lawsuit and New Evidence

NCUA filed suit against David Addison on December 20, 2012, alleging claims for gross negligence and breach of fiduciary duty. *See Nat'l Credit Union Admin. Bd. v. Addison*, No. 3:12-cv-5191-G, Dkt. No. 1 (N.D. Tex. Dec. 12, 2012). Plaintiffs moved to reopen discovery in this case, arguing that previous discovery requests to obtain information like that alleged in the Addison complaint had been unavailing.

On May 14, 2013, Chief Judge Solis reopened limited discovery as to NCUA and granted leave to conduct limited discovery as to Defendant David Addison. *See* Dkt. No. 186.

Plaintiffs then served supplemental discovery requests on NCUA/TCU on May 30, 2013. Plaintiffs filed a motion to compel on November 1, 2013, *see* Dkt. No. 199, and the Court sustained NCUA's objections to requests that exceeded the scope of the limited discovery order, *see* Dkt. No. 232; Dkt. No. 267 at 180-215.

NCUA/TCU ultimately produced all documents produced in the Addison litigation to Plaintiffs. Plaintiffs also made a formal request for information to NCUA Regulators, and, with NCUA/TCU's assistance, the regulators provided documents to Plaintiffs. *See* Dkt. No. 266. And Plaintiffs obtained documents from independent sources.

At the April 21, 2015 evidentiary hearing in this case, it was established that former employee James Richey was the source of the documents obtained from independent sources. Mr. Richey's affidavit failed to authenticate the attached documents. *See* Dkt. No. 293 (affidavit). But Mr. Richey testified that each of the

-16-

documents was a true and correct copy of a document downloaded from his TCC computer and provided to Plaintiff's attorneys. *See* Dkt. No. 312.

In the Motion for Sanctions, Plaintiffs compartmentalize the newly obtained evidence into five critical topics: (1) information concerning the handling of the Green Hills loan, including construction draw requests, and specifically TCC's Standard Operating Procedures for Lending/Underwriting; (2) information related to TCC's and CULS's significant liquidity shortfalls; (3) information related to Addison's reckless control of TCC and CULS, including the Curley Insurance Group acquisition; (4) information related to the policies, procedures, and business strategies of TCU, TCC and CULS with respect to commercial lending; and (5) information related to Addison's improper mechanisms of attaining compensation to TCC's and CULS's detriment. *See* Dkt. No. 253 at 31-56 (outlining newly obtained evidence in detail). Plaintiffs argue that the new evidence would have been responsive to Plaintiffs' prior discovery requests and that the existence of this evidence proves Defendants' discovery abuses throughout the litigation.

## Legal Standards

Federal Rule of Civil Procedure 37 allows the district court to sanction a party for "fail[ing] to obey an order to provide or permit discovery" by taking any number of possible actions, including "striking pleadings in whole or in part," "dismissing the action in whole or in part," or "rendering default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A). Courts in the Fifth Circuit look to the following considerations when determining if dismissal or default judgment is an appropriate

sanction: whether failure to comply with the Court's order results from wilfulness or bad faith, not from an inability to comply; whether the deterrent value of Rule 37 cannot be achieved by the use of less drastic sanctions; and whether the other party's preparation for trial was substantially prejudiced. *See Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990); *Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). Because of the severity of the sanction, a default judgment or dismissal with prejudice typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct. *See Compass Bank v. Villareal*, Civ. A. No. L-10-8, 2011 WL 1740270, at *5 (S.D. Tex. May 5, 2011) (citing cases).

The United States Court of Appeals for the Fifth Circuit has noted that dismissal with prejudice is "a draconian remedy" and the "remedy of last resort" "[b]ecause the law favors the resolution of legal claims on the merits and because dismissal is a severe sanction that implicates due process." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir.1994) (citation omitted). Likewise, default judgment is a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n v. Am. First Mtg. Funding Corp.*, 874 F.2d 274, 276 (5th Cir. 1989). In certain circumstances, dispositive sanctions are justified "not merely to punish those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976). But there is generally a strong policy in favor of deciding

-18-

cases on the merits. *See Fortenberry v. Texas*, 75 Fed. App'x 924, 926 n.1 (5th Cir. 2003).

In determining whether to assess litigation-ending sanctions, a court should consider (1) whether the misconduct resulted from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) whether the misconduct is attributable to the client instead of the attorney; (3) whether the opposing party is substantially prejudiced by the misconduct; and (4) whether a less drastic sanction would substantially achieve the desired deterrent. *See Conner*, 20 F.3d at 1380-81.

## Analysis

Plaintiffs seek only death penalty sanctions – they expressly aver that they do not seek to compel the production of documents. And, while Plaintiffs make passing reference in their motion to the Court's inherent power to levy sanctions, during oral argument at the March 20, 2015 hearing, Plaintiffs' counsel confirmed that Plaintiffs seek sanctions under Rule 37(b) alone based on the three discovery orders or rulings discussed above. *See* Dkt. No. 294 at 7, 60-61. Further, although Plaintiffs' supplement to their Motion for Sanctions raised conduct at several depositions, Plaintiffs' counsel made clear at the March 20, 2015 hearing that Plaintiffs are not raising that conduct as a separate grounds for imposing sanctions on their motion or invoking any additional authority for sanctions, such as Federal Rule of Civil Procedure 32(d). *See id.* at 28-29, 57-58; *see also* Dkt. No. 297; Dkt. No. 304.

Because of the unusual procedural circumstances in this case, sanctions should

not be assessed under Rule 37 because there are no enforceable discovery orders that have been violated. Despite multiple motions to compel and lengthy discovery-related hearings, there is only one written discovery order in the record, and it was entered after the case was removed to federal court and did not require the production of documents.

The state court judge's numerous oral rulings concerning discovery were not reduced to writing, and the determination of whether those oral rulings were enforceable orders subject to sanctions differs in state and federal courts. Typically, removal occurs early in the litigation – generally within 30 days of Defendant's receipt of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). But this case was removed by intervenor NCUA over two years after the lawsuit was filed and the parties had engaged in extensive discovery disputes.

Once a case is removed, the federal court takes the case as it finds it on removal. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 435-36 (1974); *Matter of Meyerland Co.*, 910 F.2d 1257, 1262 (5th Cir. 1990). Federal courts must "treat everything that occurred in the state court as if it had taken place" in the federal court. *Matter of Meyerland Co.*, 910 F.2d at 1262 (quoting *In re Savers Federal Sav. & Loan Ass'n*, 872 F.2d 963, 966 (11th Cir. 1989)).

In federal court, a formal, written order to comply with discovery requests is not required for sanctions under Rule 37(b); an oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discovery. *See Halas v. Consumer Servs., Inc.*, 17 F.3d

161, 164 (7th Cir. 1994). But, under Texas state law, a party seeking relief from a trial court's oral ruling must show that the oral ruling was clear, specific, and adequately shown by the record. The words used by the trial court also must clearly indicate present intent, as opposed to future intent, to render judgment at the time the words are expressed. *See In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App. – Fort Worth 2001, orig. proceeding).

The state court judge's oral rulings in this case might or might not be enforceable if treated as if they had been made in federal court and therefore subject to federal rules, but they are not enforceable as they were made in state court because the state district judge used language indicating that she anticipated entering written orders on the motions to compel. Taking the case as it finds it, the Court construes the state court's oral rulings under state rules to which the rulings were subject when made and concludes that those orders are not enforceable. To hold otherwise – to hold rulings made in state court to federal court standards – would be to put parties in the untenable position of being required to review all discovery rulings prior to removal of a case to determine if the rulings would have been enforceable under the federal rules (which did not govern the case at the time the rulings were made) and, if so, to supplement their document production even though a responding party may have had no duty to produce documents at the time that the rulings were made. Removal of the case did not transform the state court's tentative oral rulings under state law into final, enforceable rulings under the federal rules.

The state court judge made clear that she intended to enter a subsequent

-21-

written order, thus indicating that the oral rulings were not final and enforceable. And, while the parties may have produced documents subject to the state court's oral rulings, they cannot be sanctioned for the failure to do so.

Moreover, the state court's rulings were as to CULS only and not as to TCU. As a result, even if the state court judge's oral rulings were enforceable as to CULS, TCU cannot be bound by – much less be sanctioned for failure to comply with – those orders.

Neither can Defendants be sanctioned for the failure to produce documents pursuant to the written order entered by Judge Kaplan. Throughout the course of discovery, the state court judge and the parties struggled with the scope of electronic discovery, and the state court judge made her oral rulings subject to future determinations concerning electronic discovery. The state court judge appointed a special master to assist in determining the scope of data to be searched for electronic discovery, and, when the case was removed to federal court, the special master's proposed order concerning the protocol of search terms was pending. Judge Kaplan accepted the special master's recommendation and entered an order establishing the protocol for searching CULS' databases and servers, not TCU's. It would have been premature for Judge Kaplan to order the production of documents at this stage because the parties were still trying to narrow the scope of searchable data. Instead, the Judge Kaplan did what he was asked to do – to establish a protocol of search terms "so that a narrowing of searches can be conducted so that the electronic discovery can be completed as efficiently and expeditiously as possible." Dkt. No. 10-1 at 76. TCU was not ordered to conduct a search, and, even though CULS subsequently voluntarily

produced documents after search using the protocol, it cannot be sanctioned for the failure to produce documents pursuant to the written order that was actually entered in this Court.

Because of the severity of the sanctions sought by Plaintiffs and the unusual procedural posture of this case, the Court finds inappropriate the imposition of sanctions under Rule 37. Parties must meet a heavy burden to justify the imposition of death-penalty sanctions, and Plaintiffs have not met it in this case. Even if the Court were to take Plaintiff's allegations concerning discovery abuse at face value, and even assuming that Plaintiffs properly authenticated all of the documents attached to the Affidavit of James Richey [Dkt. No. 293], Plaintiffs have not established that Defendants "fail[ed] to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A). CULS's objections to the Affidavit of James Richey [Dkt. No. 308] and to Plaintiffs' reliance thereon in support of their Motion for Sanctions are therefore moot.

## Conclusion

Plaintiffs' Motion for Sanctions [Dkt. No. 252] is DENIED.

Out of an abundance of caution, the Court will enter this Memorandum Opinion and Order Denying Plaintiffs' Motion for Sanctions under seal because the Motion for Sanctions and some accompanying and responsive documents were filed under seal pursuant to the Agreed Stipulation and Protective Order entered in this case. The parties are further ORDERED to file a joint status report by **May 4, 2015** setting forth their views on whether this Memorandum Opinion and Order Denying Plaintiffs' Motion for Sanctions contains any confidential information subject to the Agreed

Stipulation and Protective Order and should therefore remain sealed.

SO ORDERED.

DATED: April 27, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE